UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE SHOE SHOW OF ROCKY MOUNT, INC.** | * | **CIVIL ACTION** |
| **V.** | * | **NO. 07-1315** |
| **PALACE PROPERTIES, L.L.C., SIZELER HAMMOND SQUARE LIMITED PARTNERSHIP, AND SIZELER PROPERTY INVESTORS, INC.** | * | **SECTION "L"(5)** |

### ORDER & REASONS

Before the Court is Plaintiff Shoe Show of Rocky Mount, Inc.'s ("Shoe Show") Motion for Partial Summary Judgment. (Rec. Doc. No. 34) For the following reasons, the motion is DENIED.

### I. Factual and Procedural Background

This case concerns whether the lease of a tenant operating a retail shoe store in a shopping complex was wrongfully terminated. The tenant, Shoe Show, signed a lease for retail space in Hammond Square Shopping Center ("Leased Premises"), located in Hammond, Louisiana, on June 24, 1994. The lease provided that the term would last for a five year and three month period ending on January 31, 2000, but was subject to two consecutive renewal options of five years each. The optional renewals were subject to the same terms as the original lease, and Shoe Show allegedly exercised those options on July 21, 1999 and July 27, 2004, which rendered the lease effective until January 31, 2010.

Through a series of transactions, the original landlord Sizeler Property Investors, Inc. ("SPI") transferred the Leased Premises to Sizeler Hammond Square Limited Partnership ("Sizeler"), and thereafter Sizeler transferred the Leased Premises to Palace Properties, L.L.C.

("Palace") by cash deed on May 11, 2006.  On September 30, 2006, Palace sent Shoe Show a letter stating that the lease would be terminated in its entirety, effective March 31, 2007, because Palace was demolishing the existing shopping center to make way for redevelopment.  On November 2, 2006, Shoe Show sent a letter to Sizeler and Palace stating that it considered termination premature, constituting a wrongful eviction and breach of contract, and Shoe Show demanded the acknowledgment of its rights under the lease.

On March 16, 2007, Shoe Show filed a complaint in this Court against Palace, SPI and Sizeler (together, the "Defendants") based on diversity jurisdiction.[1]  Shoe Show brings claims for breach of contract and warranty of peaceful possession and seeks remedies of specific performance and preliminary injunctive relief to prohibit the Defendants from evicting Shoe Show and/or demolishing the shopping center in which the Leased Premises are located to preserve the status quo until trial on the merits.  Further, on June 8, 2007, Shoe Show amended its complaint to seek damages in addition to the specific performance already sought.

Also on March 16, 2007, Shoe Show moved for a preliminary injunction preventing the Defendants from demolishing the Leased Premises and allowing the Shoe Show to continue to occupy the Leased Premises.  (Rec. Doc. No. 6)  The Court denied the motion for a preliminary injunction holding that the harm to Palace, various third party retailers, the City of Hammond and even to Shoe Show by granting an injunction greatly outweighed the benefits of granting one.  (Rec. Doc. No. 9)

---

[1] In its complaint, Shoe Show states that it is a North Carolina corporation, Palace is a Louisiana limited liability company whose members are Louisiana domiciliaries, Sizeler is a Delaware limited partnership whose general partner is a Louisiana corporation, SPI is a Delaware corporation, and the amount in controversy exceeds $75,000.00 (Pl. Compl. ¶¶ 1 &2).

**II.  Motion for Partial Summary Judgment**

Shoe Show now moves for partial summary judgment seeking to have the Court award specific performance and injunctive relief enforcing the "Restriction on Competition" rider to the Lease.  In support of its motion, Shoe Show argues that specific performance is the preferred remedy in Louisiana, and that specific performance of the obligation is fair and just because otherwise Palace would be able to profit from its bad faith breach of the Lease.  Shoe Show argues that it is seeking specific performance of Palace's obligation not to lease space to another open display family show operation and performing this obligation is clearly feasible. Additionally, Shoe Show argues that allowing Palace to lease space in the shopping center to another open display family shoe operation would render Shoe Show unable to mitigate its damages.  Shoe Show also argues that it has satisfied the criteria for obtaining a permanent injunction in that its injury without the injunction outweighs Palace's injury  with the injunction and that there public has no discernable interest in the matter.

In opposition, the Defendants argue that Show Shoe is unable to show its entitlement to specific performance in light of the fact that the Lease has been terminated.  Additionally, the Defendants argue that Shoe Show is unable to show that its damages are irreparable in nature. The Defendants also argue that it is not practicable to enjoin them from leasing space in a shopping center to another open  display family shoe store in light of the fact that the shopping center has been demolished.

**III.    Law and Analysis**

    **A.    Summary Judgment Standard**

Summary Judgment is granted if the "pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under governing law[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must review the facts "drawing inferences in a manner most favorable to the nonmoving party." *See General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). A moving party must demonstrate an absence of genuine issues of material fact, meaning "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the party moving for summary judgment demonstrates such absence, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

### B.     Standard for a Permanent Injunction

The Fifth Circuit has stated that "[i]njunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The standard for a permanent injunction is essentially the same as for a preliminary injunction. *McWaters v. FEMA*, 436 F. Supp. 2d 802, 810 (E.D. La. 2006). In order to succeed, the plaintiff must establish each of the following elements: (1) actual success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the defendants; and (4) that the injunction will not impair the public interest. *Id.* at 810-11. "The difference between

the standard for a permanent injunction and the standard for a preliminary injunction is that in the former the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits." *Id.* (*citing Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F. Supp. 2d 802, 809 (N.D. Tex. 2002)).

       1.     Success on the Merits

This Court has jurisdiction over the matter based on diversity, and thus Louisiana law applies*. See FMC Finance Corp. v. Reed*, 592 F.2d 238, 241 (5th Cir. 1979). Under Louisiana law, a contract must be strictly construed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." La. Civ. Code art. 2046. Each provision of the contract must be interpreted considering all other provisions so that each provision is given the meaning suggested by the contract as a whole. La. Civ. Code. art. 2050.

The provision of the Lease that Shoe Show moves to enjoin Palace from violating reads in its entirety:

> Landlord agrees that, so long as Tenant is open and operating its store in the Shopping Center, Landlord will lease no other space in the shopping center to another open display family shoe operation. This restriction shall not be applicable to any shoe store presently in the Shopping Center at the time of the execution of this Lease, or to a replacement thereof in the same location or any other comparable sized store in the center; provided, however, any such replacement cannot be Lerner Shoes, Famous Footwear, Shoe Carnival, Shoe Sensations or Shoe Station. If landlord violates this restriction, Tenant shall have the option of either terminating its lease, or electing to receive a fifty (50%) percent reduction in its minimum rent and other charges for so long as the offending competitor is open and operating. Tenant's right to cancel; the lease or receive a reduction in rent shall be its only remedies in the event of Landlord's breach of this covenant, and Tenant shall not be entitled to injunctive relief or any action for damages.

The parties initially dispute whether the Lease is still in effect, and, therefore, whether Shoe Show can even seek specific performance of the Lease. Shoe Show argues that, pursuant to Louisiana Civil Code article 2719, when a party to a lease fails to perform its obligations under the lease, the other party may obtain dissolution of the lease, therefore, unless Shoe Show elects to dissolve the Lease, its provisions remain enforceable. Conversely, the Defendants argue that, pursuant to Louisiana Civil Code article 2714, once the shopping mall was destroyed, the Lease terminated.

Article 2714 of the Louisiana Civil Code provides that "[i]f the leased thing is lost or totally destroyed, without the fault of either party, or if it is expropriated, the lease terminates and neither party owes damages to the other." La. C.C. art. 2714. Comment (b) to Article 2714 states that "[i]f the loss or destruction is total, or if the whole thing is expropriated, then under Civil Code Article 2714, the lease terminates, regardless of whether the events that brought about the loss or destruction are attributable to the fault of either party." Further, the comment states that the phrase "without the fault of either party" addresses the parties' right to claim damages. La. Civ. Code art. 2714, cmt (b). While the statements contained in the official comments are not part of the article and are not binding on court, the comments are to be considered. *See Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 893 So.2d 789, 797 (La. 2005).

Article 2714 applies only where there is no lease agreement to the contrary. *Cerniglia v. Napoli*, 517 So.2d 1209, 1212 (La. Ct. App. 1987). The Lease, however, does not contain a provision to the contrary. Section 6(e) of the Lease provides for what will happen in the event the Leased Premises are damaged by fire, the elements, unavoidable accident, or other casualty

covered by the ususal policy insuring for fire and extended coverage. This provision of the lease does not provide for the situation here: where the landlord has decided to destroy the leased thing. As a result, the terms of Article 2714 are applicable to the Lease, and, upon the destruction of the Leased Premises, the Lease was terminated. *See also Schwegmann Family Trust No. 2 v. KFC National Management Co.*, 2007 WL 60971, *3 (E.D. La. Jan. 5, 2007).

"It is self-evident ... that unless [the plaintiff] has a substantive right to specifically enforce the obligation, neither an injunction nor any other procedural remedy may be used." *J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So.2d 896, 899 (La. 1981). A lease that terminates pursuant to Article 2714 terminates by operation of law. La. Civ. Code art 2714, cmt. d. Since the Lease has been terminated, Shoe Show does not have a substantive right to specifically enforce. Accordingly, Shoe Show cannot show success on the merits and an injunction is improper.

Assuming, however, that the Lease did not terminate as a result of the demolition of the Leases Premises, Shoe Show still cannot show it is entitled to specific performance of this provision. Under Louisiana law, specific performance is the preferred remedy for breach of a contract unless specific relief is impossible, when the inconvenience or cost of performing is greatly disproportionate to the damages caused, when it is no longer in the creditor's interest, or when it would have a substantial negative effect on the interests of third parties. *J. Weingarten*, 404 So.2d at 897 (La. 1981). The Shopping Center, as defined in the Lease, no longer exists and accordingly, Palace cannot lease any space in the Shopping Center to another open display family shoe operation. Second, the specific provision of the Lease provides that it applies "so long as [Shoe Show] is open and operating its store in the Shopping Center." Due to the

demolition of the Shopping Center, Shoe Show is no longer operating its store in the Shopping Center.

### 2. Irreparable Injury

"An irreparable injury is one that cannot be remedied by an award of economic damages." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Hibernia Nat'l Bank v. Blossman*, 583 So.2d 5 (La. App. 4 Cir. 1991). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975) (internal citations and quotations omitted). However, a finding of irreparable harm may be appropriate when economic rights are involved if the determination of the dollar value of the loss is particularly difficult or speculative. *Allied Marketing*, 878 F.2d at 810.

The Court finds that a party who is injured by wrongful termination of a lease may be adequately compensated by monetary damages which can be calculated after a successful trial on the merits. There exists a substantial sales history representing over twelve years of Shoe Show's business operations at the Leased Premises from which the Court and the parties may calculate the harm incurred by Shoe Show. Additionally, the cost of displacement or to move to another location, should Shoe Show desire to continue operations in the community, is easily quantifiable. Though the location of the shopping complex could be valuable, there are many other available locations in the local area where Shoe Show could relocate its operations.

Shoe Show argues that if Palace is not enjoined from leasing space in the new shopping

center to another open display family shoe operation, then Shoe Show will be unable to mitigate its damages. An injured party has a duty to mitigate his or her damages, however, this duty requires that the injured party take reasonable steps to minimize the consequences of the injury. *Dixie Services, LLC v. R&B Falcon Drilling USA, Inc.*, 955 So.2d 214, 219 (La. Ct. App. 2007). If Palace is found liable and does lease space to another open display family shoe operation, that would surely be a fact that the Court would take into consideration when determining whether Shoe Show took reasonable steps to mitigate its damages.

Accordingly, the Court finds that Shoe Show is unable to show that it will suffer irreparable harm if the injunction is not granted. In light of the fact that Shoe Show is unable to satisfy the first two elements, the Court will not address the last two elements for granting a permanent injunction.

**IV. Conclusion**

Accordingly, Shoe Show's Motion for Partial Summary Judgment is DENIED.

New Orleans, Louisiana, this 28th day of November, 2007.

_____
UNITED STATES DISTRICT JUDGE